# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2912

_____

United States of America,          *
                                   *
          Appellant,               *
                                   *    Appeal from the United States
     v.                            *    District Court for the
                                   *    Western District of Missouri.
Phillip O'Malley,                  *
                                   *
          Appellee.                *

_____

Submitted: April 13, 2005
Filed: October 4, 2005

_____

Before COLLOTON, McMILLIAN, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Phillip O'Malley was convicted of conspiracy to commit fraud. His sentence required that he serve a term of probation, perform community service, pay a $10,000 fine, and make restitution in the amount of $459,047.02. On appeal by the government, this court concluded that the district court erroneously calculated the amount of loss and impermissibly departed from the then-mandatory guideline range. *United States v. O'Malley*, 364 F.3d 974 (8th Cir. 2004). On remand, the district court imposed the same sentence, and the government again appeals. We reverse and remand again for resentencing.

I.

O'Malley's conviction arose from a conspiracy to commit fraud in the sale of chlorofluorocarbon gases, or freon. As the operator of several companies that sold freon, O'Malley and two co-conspirators arranged to sell freon to a local Sam's Club, and then to re-purchase and re-sell some of the freon, at inflated prices. At the first sentencing hearing, the district court found that the amount of financial loss to Sam's Club for purposes of the sentencing guidelines and restitution was $459,047.02. On the first appeal, our court held that the loss amount should have included all of the funds retained by all of the co-conspirators, and that the correct amount was $756,460. *O'Malley*, 364 F.3d at 980.

The district court also considered O'Malley's offense to be "outside the heartland" of offenses typically governed by the fraud guideline, so the court departed downward from the applicable guideline range and sentenced O'Malley to three years' probation. In the district court's view, O'Malley's extraordinary restitution efforts, the potential economic impact of his absence from the community, and the overstated effect of his role in the offense under the guidelines warranted a downward departure. On appeal, our court disagreed and held that a departure was not justified. *O'Malley*, 364 F.3d at 980-83.

At a resentencing hearing on July 8, 2004, the district court considered the impact of the Supreme Court's recent decision in *Blakely v. Washington,* 124 S. Ct. 2531 (2004), which held that under Washington's determinate sentencing scheme, the Sixth Amendment requires that a defendant's sentence not be enhanced beyond the sentence authorized by the verdict based on any fact not admitted by the defendant or found by a jury. *Id.* at 2537. The court found that *Blakely* applied to O'Malley's case, and based on the fact that a jury had not made findings on certain sentencing matters, the court sustained O'Malley's objection to an enhancement for the amount of loss and declined to impose an additional enhancement for more than minimal

planning. *See* USSG § 2F1.1(b)(1), (2) (2000). The district court also adjusted O'Malley's offense level downward by three levels based on a finding of a mitigating role in the offense. *See* USSG § 3B1.2(b). As a result, O'Malley's new offense level was three, and the guideline sentencing range was zero to six months' imprisonment. The court chose to impose the same sentence that it originally imposed, and O'Malley was thus sentenced to three years' probation and ordered to pay restitution in the amount of $459,047.02 and a fine of $10,000.

The government appeals, arguing that the district court erred in imposing a sentence that contravened this court's previous mandate, and in revisiting issues that were uncontested at the original sentencing. In its brief, the government also argued that *Blakely* does not apply to the United States Sentencing Guidelines and that the district court erred in sentencing O'Malley as though the guidelines were unconstitutional. Although our review of the government's contention with respect to *Blakely* is necessarily informed by the Supreme Court's more recent decision in *United States v. Booker,* 125 S. Ct. 738 (2005), we agree that the district court – which also acted without the benefit of *Booker* – committed error in its most recent sentencing of O'Malley, and we reverse and remand for resentencing.

II.

In *Booker*, the Supreme Court declared that mandatory application of the United States Sentencing Guidelines violated the Sixth Amendment in certain cases, and held as a remedy that the guidelines are "effectively advisory" in all cases. *Id.* at 756-57. The district court must still "consult" the guidelines and "take them into account" during sentencing, but it may vary from the guideline range based on factors set forth in 18 U.S.C. § 3553(a). *Id.* at 767.

In the government's view, "retroactive application of *Blakely*" to O'Malley's case was inappropriate because *Blakely* was a "procedural rule which would not be

applicable to cases no longer on appeal when it was decided." (Appellant's Br. at 6). To whatever extent the government argues that we are bound to consider only pre-*Booker* principles in reviewing the sentence imposed by the district court, we disagree. The Supreme Court made clear in *Booker* that both its Sixth Amendment holding and its remedial excision of the portion of the Sentencing Reform Act that made the guidelines mandatory are now applicable "to all cases on direct review." 125 S. Ct. at 769.

We agree with the government, however, that the district court's understanding of the impact of *Blakely* on the federal guidelines was erroneous. The district court declined to enhance O'Malley's guideline offense level for the amount of loss, role in the offense, and more than minimal planning, at least in part because the "jury was not asked to make decisions" regarding those enhancements. (Resentencing Tr. at 16). The Supreme Court's chosen remedy in *Booker*, however, was not to disallow such enhancements altogether, but rather to treat the guidelines as advisory. *Booker,* 125 S. Ct. at 757. "[W]ith the mandatory use of the Guidelines excised, the traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection." *United States v. Haack*, 403 F.3d 997, 1003 (8th Cir. 2005) (quoting *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005)). Thus, for purposes of the now-advisory nature of the guidelines, "the applicable Guidelines range is normally to be determined in the same manner as before *Booker/Fanfan*." *Id.*

Under *Booker,* which of course was not available at the time of the hearing, the district court should have calculated and considered the guideline range as it would have done under the mandatory guidelines, and then considered that advisory range together with the other factors in § 3553(a). Pursuant to our court's prior decision, the proper loss amount for purposes of the sentencing guideline on fraud is $756,460, and the district court should apply this loss amount when calculating the proper advisory guideline range.

The government also argues that the mandate required the district court to order restitution in the amount of $756,460. The district court's initial determination of the loss amount applied to all relevant sentencing purposes, including restitution, 364 F.3d at 978, and the government appealed the amount of loss for purposes of both the guidelines offense level and restitution. Our court's opinion on the first appeal made no distinction between the two loss amounts, and we read it to hold that the amount of loss should be $756,460 for all relevant sentencing purposes, including restitution. Determination of restitution is unaffected by *Booker*, *United States v. Carruth*, 418 F.3d 900, 904 (8th Cir. 2005), and the loss amount determined in the first appeal should have governed the district court's imposition of restitution at resentencing. On remand, therefore, the district court should impose restitution in the amount of $756,460.

Finally, the government argues that the mandate rule precluded the district court from considering a downward adjustment based on O'Malley's role in the offense. We disagree. The district court's decision to consider O'Malley's potentially mitigating role is not inconsistent with our prior opinion, and therefore does not violate the mandate rule. After finding that the district court had improperly considered O'Malley's role in the offense as the basis for a departure, we specifically stated that "[u]pon review, we cannot say that O'Malley may not receive a downward *adjustment* under USSG § 3B1.2 for his mitigating role; however, there is nothing so unusual in the circumstances of the present case to warrant a downward *departure* on that basis." *O'Malley*, 364 F.3d at 983 (emphasis in original). Because the opinion explicitly contemplated a possible adjustment for O'Malley's role in the offense, the district court's subsequent reduction of the offense level based on this factor does not violate the mandate.

For the foregoing reasons, we vacate O'Malley's sentence and remand for resentencing consistent with this opinion. The district court should determine the advisory guidelines sentencing range consistent with this opinion and our prior

opinion, and then determine an appropriate sentence in light of *Booker* and 18 U.S.C. § 3553(a).

_____